UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANGELA LYNN MARIE NEWTON,<br><br>Petitioner,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>Respondent. | NO. CV-11-168-RHW<br><br>**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Petitioner's Motion for Summary Judgment, ECF No. 13 and Respondent's Motion for Summary Judgment, ECF No. 17. The motions were heard without oral argument. Petitioner is represented by Rebecca M. Coufal. Respondent[1] is represented by Assistant United States Attorney Pamela De Rusha and Special Assistant United States Attorney Franco L. Becia.

**I.    Jurisdiction**

On February 8, 2008, Petitioner Angela Lynn Marie Newton filed an application for Supplemental Social Security Income (SSI) and Social Security

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

Disability Insurance Benefits (SSDIB).[2] Petitioner alleges she has been disabled since November 1, 2005.

Her application was denied initially and again denied on reconsideration. A timely request for a hearing was made and Petitioner appeared before Administrative Law Judge (ALJ) Moira Ausems on October 1, 2009, in Spokane, Washington. Petitioner was represented by Gary Penar, an attorney. Debra LaPointe, a vocational expert, also participated.

The ALJ issued a decision on February 26, 2010, finding that Petitioner was not disabled. Petitioner timely requested review by the Appeals Council, which was denied March 9, 2011. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. (42 U.S.C. §405(h)). Petitioner filed a timely appeal with the U.S. District Court for the Eastern District of Washington on April 6, 2011. The instant matter is before the district court pursuant to 42 U.S.C. § 405(g).

**II.    Sequential Evaluation Process**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

---

[2] Petitioner had previously filed dual claims on August 18, 2005, April 13, 2006, and May 4, 2007. The first two were not pursued after initial denials and the last was not pursued after a denial on reconsideration (Tr. 20.)

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. §§ 404.1574, 416.972; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. §§ 404.1571, 416.920(b). If he is not, the ALJ proceeds to step two.

Step 2: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Step 4: Does the impairment prevent the claimant from performing work she has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. *Id.* If the claimant cannot perform this work, proceed to the fifth and final step.

Step 5: Is the claimant able to perform other work in the national economy

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 3

in view of her age, education, and work experience?  20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

**III.   Standard of Review**

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 .S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors  as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 4

## IV. Statement of Facts

The facts have been presented in the administrative transcript and the ALJ's decision, and will only be summarized here.

At the time of the hearing, Plaintiff was thirty-three years old. She completed the ninth grade and obtained her GED in 1992. She has worked in a variety of jobs, including cocktail waitressing, selling cars, retail sales, in-home care and telemarketing.

At the hearing, Petitioner testified she has pain in her neck, shoulders, elbows, knees, feet and hands. She testified her pain flare-ups are unpredictable and range in varying degrees of severity. She reported she has experienced daily tension headaches since childhood. These headaches cause her to vomit at least once a week. At least two days a month, she cannot lift her head from a pillow because of the pain, and if she overuses her hands, she has decreased strength. She also testified if she physically over-exerted herself, she would experience flare-ups of her pain symptoms. On bad days, she is immobilized by pain. She maintains she is unable to perform sustained activity eight hours per day due to pain and anxiety-related symptoms while working around others, and reports she is only able to be active for 45 minutes to an hour before she needs to rest for at least 30 minutes. She testified that she rarely leaves home and experiences anxiety around others.

She also reported that she is able to live independently and is able to garden, watch movies, write poetry, walk, grocery shop, and attend appointments. She does not have any difficulty doing household chores, including vacuuming, dusting, washing dishes, laundry, or cooking. She uses public transportation. She paints, visits friends, and handles her finances.

## V. The ALJ's findings

Although Petitioner filed prior applications, the ALJ declined to reopen the applications and found that the adjudicatory period for Petitioner's current application commenced on August 21, 2007. (Tr. 21.)

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

At step one, the ALJ found Petitioner had not engaged in substantial gainful activity since November 1, 2005, her alleged disability onset date. (Tr. 23.)[3]

At step two, the ALJ found Petitioner had the following severe impairments:

1. history of a right femoral fracture in 2000, status post right femur/hip surgery with residual degenerative changes;
2. history of a left clavicle fracture and whiplash injury in 2000, with residual left shoulder/neck myalgias and cervicalgia,
3. history of remote healed right ulnoid fracture with residual degenerative changes of the radiocarpal joint;
4. migraine headache disorder associated with temporomandibular joint syndrome (TMJ);
5. mild lumbar degenerative disc and facet disease;
6. fibromyalgia vs. myofascial pain disorder;
7. major depressive disorder;
8. post-traumatic stress disorder;
9. somatoform disorder;
10. personality disorder; and
11. a history of alcohol, marijuana, opiate, and benzodiazepine abuse

(Tr. 23.)

The ALJ did not find that objective medical findings established left hand degenerative joint disease or any condition affecting the knees or feet, concluding these alleged symptoms were not a medically determinable severe impairment. (Tr. 24.)

At step three, the ALJ found that Petitioner's impairments or combination of

---

[3] The ALJ found that although Petitioner had engaged in work activity during the period in which she alleged disability, these unsuccessful work attempts did not rise to the level of substantial gainful activity. (Tr. 23.)

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

impairments did not meet or medically equal any of the listed impairments described at 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926). (Tr. 24.) The ALJ found the mental impairment(s) did not satisfy the criteria of paragraphs "B" or "C" of the applicable mental disorder listing. (Tr. 24.)

At step four, the ALJ found Plaintiff had the physical residual functional capacity[4] to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that she cannot climb ladders/ropes/scaffolds; she needs to avoid concentrated exposure to hazards such as machinery and heights; and she is unable to perform more than simple, routine tasks that do not involve more than superficial contact with co-workers and the general public. (Tr. 25.) She concluded that Plaintiff is capable of performing past relevant work as a locker room attendant.

In the alternative, the ALJ performed step five of the sequential evaluation process and concluded there are other jobs that exist in significant numbers in the national economy Plaintiff can perform, including housekeeper/cleaner, production assembler, and mail clerk, as well as an outside deliverer and a parking lot attendant. (Tr. 25.)

The ALJ concluded that Plaintiff has not been under a disability from November 1, 2005 through February 26, 2010.

**VI.    Issues for Review**

Plaintiff presents the following issues for review:

1. Whether the ALJ erred in disregarding Petitioner's treating and examining physicians' opinions as well as the opinion of her

---

[4] An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

psychologist;

2. Whether the ALJ erred in not consulting a medical expert;

3. Whether the ALJ erred in not finding severe impairments of anxiety disorder and celiac disease;

4. Whether the ALJ erred in not finding Petitioner credible;

5. Whether the ALJ erred in failing to present a hypothetical that included all of Petitioner's Limitations.

VII. Discussion

**1. Whether the ALJ erred in disregarding Petitioner's treating and examining physicians' as well as her psychologist's opinions, and in not consulting a medical expert**

Petitioner argues the ALJ "picks and chooses what parts of the various reports she will utilize." ECF No. 14 at 14. She asserts that the ALJ gave the DDS record reviewing psychologists, Dr. Kraft and Dr. Flanagan, significant weight, but did not use their findings in her decision, and erred in giving some, but not all of Dr. Brown's findings significant weight. Also, the ALJ erred in giving Dr. Genthe's opinion of marked social imitations little weight. Finally, she argues the ALJ erred in dismissing Dr. Angell's opinion that he did not believe that Petitioner was malingering. Consequently, Petitioner faults the ALJ for substituting her views for the evidence in the record without the assistance of a Medical Expert. She maintains that picking and choosing what parts of the record she agrees with is legal error and is not supported by substantial evidence in the record.

While the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability, the ALJ must present clear and convincing reasons for rejecting the uncontroverted opinion of a claimant's physician. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). "Although the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

examining physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* (citations omitted). The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. *Id.* The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Id.*

On January 31, 2008, Thomas Genthe, Ph.D, examining psychologist, conducted a Psychological Assessment Report. (Tr. 1032.) He noted her depression and anxiety were in remission and she presented with normal mental status. (Tr. 1033.) He noted, however, that she has relapsed with respect to her prescription abuse and failed to engage in mental health counseling. (Tr. 1032.) He concluded that with treatment, Petitioner could attain a much better level of functioning within the next six to twelve months. (Tr. 1033.) He noted Petitioner demonstrated an unusual degree of somatic concerns, which suggested "a ruminative preoccupation with physical functioning and health matters and severe impairment arising from somatic symptoms." (Tr. 1037.) He also noted that her interpersonal style is best characterized as "friendly and extraverted," she usually prefers activities that bring her into contact with others, rather than solitary pursuits, and she is someone who is comfortable in most social situations. (Tr. 1039.)

On March 24, 2008, Dr. Angell, Petitioner's treating physician, completed a Physical Evaluation form and found Petitioner's overall work level to be sedentary. (Tr. 1042.) He found she had moderate to marked fibromyalgia, mild to marked chronic headaches, mild to moderate insomnia, and moderate anxiety. (Tr. 1042.) In 2009, Dr. Muramatsu also completed a Physical Evaluation form and also rated Petitioner capable of performing "sedentary" work. (Tr. 1096).

Patricia Kraft, Ph.D., reviewing medical consultant, completed a Mental

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 9

Residual Functional Capacity Assessment and a Psychiatric Review Technique form on April 21, 2008. (Tr. 1054.) She noted Petitioner was moderately limited in: (1) the ability to work in coordination with or proximity to others without being distracted by them; (2) the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) the ability to interact appropriately with the general public; and (4) the ability to get along with coworkers or peers without distracting them or exhibiting behavior extremes. (Tr. 1054-55.). She concluded Petitioner had the ability to understand, remember and carry out non-complex and complex instructions and tasks and would work best with superficial public and coworker contact. (Tr. 1054.) In reviewing her functional limitations, Dr. Kraft concluded Petitioner had a mild limitation in restrictions of activities of daily living, and moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. (Tr. 1068.) On reconsideration, Rita Flanagan, Ph.D., reviewing medical consultant, conducted a case analysis on June 6, 2008, and affirmed the MRFC/PRTF limitations identified by Dr. Kraft (Tr. 1081.)

On January 31, 2009, Cheyenne Kelling[5], M.A. conducted a Psychological/Psychiatric Evaluation and rated Petitioner as "marked" in the following areas: verbal expression of anxiety or fear; social withdrawal, physical complaints; and global illness. She identified the following moderate functional limitations: (1) ability to exercise judgment and make decisions; (2) ability to perform routine tasks; (3) ability to relate appropriately to co-workers and supervisors; (4) ability to interact appropriately in public contacts; (5) ability to respond appropriately to and tolerate the pressures and expectations of a normal

---

[5]Ms. Kelling was supervised by Debra Brown, Ph.D.

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 10

work setting; and (6) ability to control physical and motor movements and maintain appropriate behavior. (Tr. 1086.) In their written assessment, Ms. Kelling and Debra Brown, Ph.D. concluded that Petitioner met the criteria for somatization disorder in that her symptoms could not be fully explained by a known general medical condition.[6] (Tr. 1093.) They ultimately concluded that if she could work on her grief, she might experience some relief from her physical symptoms. (Tr. 1093.)

Here, the ALJ set forth specific, legitimate reasons for rejecting the treating and evaluating physician's opinions. Her reasons are supported by substantial evidence in the record. With respect to Dr. Genthe, she gave little weight to his conclusions that Petitioner had marked cognitive and social functioning. She noted that Dr. Genthe's conclusion was based on Petitioner's inability to remain clean and sober and follow-through with mental health treatment. She also concluded that his notations were inconsistent with his contemporaneous mental evaluation in that Dr. Genthe observed normal mental status and found her to be "cooperative" and "friendly." (Tr. 30.)

With respect to Drs. Angell and Muramatsu's opinion that Petitioner was limited to sedentary work, the ALJ rejected these findings, concluding that the opinions were not consistent or supported by the findings reported by each source in the treatment notes upon contemporaneous physical exam and with Petitioner's admitted daily functioning and other reported activities, including housecleaning,

---

[6] As they explained:

> This is a chronic condition and the disorder rarely remits completely. Essentially, counseling is not effective because individuals with this type of disorder do not think there is anything psychologically wrong with them. They seek answers for their distress through medical doctor shopping. Since there is rarely anything truly physically wrong with them, and they do not receive relief from the medical treatment they receive, they can become frustrated and have a high potential for lawsuits. Great care should be taken by physicians when prescribing medications.

(Tr. 1093.)

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

cooking, shopping, and chopping wood. (Tr. 29, 30.)

With respect to Dr. Brown's opinions, the ALJ found that Dr. Brown's conclusions that Petitioner was moderately limited in her abilities to exercise judgment and make decisions, perform routine tasks, handle the pressures of a normal work setting, and control and maintain appropriate behavior were not supported by the weight of the evidence. (Tr. 30.) She found these limitations were inconsistent with Petitioner's presentation and performance upon repeated mental status examinations. (Tr. 30.)

The ALJ incorporated Drs. Kraft and Flanagan's mental limitations by requiring simple, routine tasks that do not involve more than superficial contact with co-workers and the general public. (Tr. 30.) Notably, however, the ALJ did not specifically address Dr. Kraft's finding that Petitioner has moderate limitations in the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She did state that the mental health limitations were consistent with Petitioner's presentation and performance during her mental examinations as well as her admitted daily living activities. (Tr. 30.) By doing so, the ALJ indicated the reason for rejecting this particular limitations, in that the limitation is not supported by the record as a whole. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that ALJ may discredit treating physician's opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

Plaintiff has not shown that the ALJ committed legal error in rejecting certain portions of the provider's opinions.

### 2. Whether the ALJ erred in not finding severe impairments of anxiety disorder and celiac disease

Petitioner argues the ALJ erred in failing to find severe impairments of anxiety disorder and celiac disease. Petitioner relies on Dr. Kraft's diagnosis of

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

anxiety disorder, as well as Dr. Muramatsu and Dr. Angell's findings that Plaintiff's celiac disease is severe.

Respondent asserts that even if the ALJ did error in not specifically identifying these as several impairments at step two, the omission was harmless because the residual functional capacity assessment accounted for her anxiety disorder, specifically, the limitation that Plaintiff would "work best with superficial public and co-worker contact." Respondent also points out Dr. Genthe found in 2008 that Plaintiff's anxiety disorder was in remission. Additionally, Respondent argues it was harmless error in failing to identify celiac disease because Petitioner has not identified any specific assessed limitation caused by the celiac disease that was not already accounted for in the residual function capacity assessment.

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 216.921. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *Id*.

The ALJ concluded that Petitioner's allegations of anxiety-related symptoms were not consistent with the record. She reviewed Petitioner's mental health treatment during the relevant period and concluded that between 2007 and 2009, she appeared to be managing her anxiety, both with and without the use of medication (Tr. 27.)

The record supports this finding. Notably, in a letter dated January 22, 2007, Dr. Angell indicated that anxiety is likely the most consistent and disabling condition and one that would likely prevent her from obtaining and maintaining employment. (Tr. 910.) He goes on to say, however, that he is confident that she will excel in the workforce when her anxiety is treated. (Tr. 910.) A couple of

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 13

months later, Dr. Angell remarked that Petitioner had generally been functioning well, even though she was not taking Librium. In 2008, Dr. Genthe found that her anxiety disorder was in remission and during this time, Petitioner told Dr. Angell that she has fewer panic attacks and felt she could tolerate a lower dose of the anti-anxiety medicine. (Tr. 1268.) In June, 2009, Dr. Angell noted that Petitioner has been doing better than she has in years, and specifically noted that Petitioner reported that her anxiety/panic attacks have mostly resolved. (Tr. 1209.)

Also, in April 30, 2009, Dr. Angell noted that while Petitioner was diagnosed with celiac disease in February, 2009, she has been doing well by avoiding gluten most of the time. (Tr. 1203.)

Given that the record supports that Petitioner's anxiety disorder has been managed by medication and has mostly resolved itself, the ALJ did not err in concluding that her previously diagnosed anxiety disorder did not significantly affect her ability to perform basic work activities during the relevant time period. Moreover, even if the ALJ erred in not listing her anxiety disorder at step two, it was harmless because the residual functional capacity assessment accounted for any limitation caused by her anxiety. Likewise, Petitioner has not identified any limitations caused by her celiac disease that should have been considered by the ALJ.

### 3.     Whether the ALJ erred in not finding Plaintiff credible

Petitioner argues the ALJ failed to provide a proper basis to find her less than credible. Petitioner does not challenge any specific basis relied upon by the ALJ in not finding her credible.

An ALJ's assessment of a claimant's credibility is entitled to "great weight." *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir.1990). When there is no evidence of malingering, the ALJ must give "specific, clear and convincing reasons" for rejecting a claimant's subjective symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted); *accord Taylor v.*

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 14

*Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186.

In her Order, the ALJ concluded that the objective medical evidence did not support Petitioner's assertion of total disability. The inconsistencies are set forth above. She relied on the following instances that she found undermined Petitioner's credibility: the failure to engage in mental health counseling; her continued request for early refills of her medications; not adhering to treatment recommendations; unexplained or inadequately explained failure to seek treatment; and evidence of drug-seeking behavior. She also relied on the fact that Plaintiff is capable of housework, including vacuuming, dusting, washing dishes, laundry, and cooking as well as gardening. She watches television, reads, paints, writes poetry, or is on the computer.  She uses public transportation and visits

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 15

friends. The ALJ noted that in August, 2008, Petitioner was socializing at a local bar. (Tr. 1119.) The ALJ found that this evidence was inconsistent with Petitioner's allegations of more limiting mental symptoms.

Here, the ALJ provided clear and convincing reasons for her credibility determination that were supported by substantial evidence.

### 4. Conclusion

The ALJ's residual functional capacity finding and vocational hypothetical question properly accounted for all of Plaintiff's physical and mental limitations that the ALJ found credible. Notably, Petitioner has not identified any additional limitations that should have been included in the hypothetical. Plaintiff has not met her burden of showing that the ALJ committed legal error, or that her conclusion that Plaintiff was not disabled from November 1, 2005 to February 26, 2010 was not supported by substantial evidence.

Accordingly, **IT IS HEREBY ORDERED:**

1. Petitioner's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2. Respondent's Motion for Summary Judgment, ECF No. 17, is **GRANTED**.

3. The decision of the Commissioner denying benefits is affirmed.

4. The District Court Executive is directed to enter judgment in favor of Respondent and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order and provide copies to counsel, and **close the file**.

**DATED** this 25th day of February, 2013.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

Q:\RHW\aCIVIL\2011\Newton, 11-168\sj.wpd

**ORDER DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT; GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** ~ 16